## NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY *v.* WOODWORTH, Administrator.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Argued.March 18th, 1884.—Decided March 31st, 1884.

*Conflict of Law—Corporation—Executor and Administrator.*

A policy of life insurance, issued by a company incorporated in one State, payable to the assured, his executors or administrators, is assets for the purpose of founding administration upon his estate in another State, in which the corporation, at and since the time of his death, does business, and, as required by the statutes of that State, has an agent on whom process against it may be served.

Under § 18, chap. 3, of the Revised Statutes of Illinois, of 1874, a husband is entitled to administration on the estate of his wife, if she left property in Illinois.

Letters of administration which state that the intestate had at the time of death personal property in the State, are sufficient evidence of the authority of the administrator to sue in that State, in the absence of proof that there was no such property.

The New England Mutual Life Insurance Company, a corporation of the State of Massachusetts, issued a policy of life insurance, on September 21st, 1869, by which, for a consideration received from Ann E. Woodworth, of Detroit, in the State of Michigan, described as " the assured in this policy,"

and of an annual premium to be paid, it agreed to pay, at its office in Boston, the amount of $5,000, " to the assured under this policy as aforesaid, her executors, administrators or assigns, in sixty days after presentation of satisfactory proof of the death of said Ann E. Woodworth, for the benefit of her husband, S. E. Woodworth, if he shall survive her."   The policy was signed by the president of the company, but was not under seal. The proof referred to was to be furnished at the Boston office.

On the 10th of January, 1877, letters of administration were granted by the County Court of the county of Champaign, in the State of Illinois, on the estate of Ann E. Woodworth.   The letters ran in the name of the People of the State of Illinois, and recited : " Whereas Ann E. Woodworth, of the county of Seneca, and State of New York, died intestate, as it is said, on or about the 25th day of October, A. D. 1875, having, at the time of her decease, personal property in this State, which may be lost, destroyed, or diminished in value if special care be not taken of the same ; " and then proceeded : " To the end, therefore, that the said property may be collected and preserved for those who shall appear to have a legal right or interest therein, we do hereby appoint Stephen E. Woodworth, of the county of Champaign, and State of Illinois, administrator of all and singular the goods and chattels, rights and credits, which were of the said Ann E. Woodworth at the time of her decease, with full power and authority to secure and collect the said property and debts, wheresoever the same may be found in this State, and in general to do and perform all other acts which now are or hereafter may be required of him by law."

On the 11th of February, 1878, Stephen E. Woodworth, as administrator of the estate of Ann E. Woodworth, deceased, commenced an action at law, in a court of the State of Illinois, against the company, on the policy, to recover the $5,000 named therein.   The summons was served on the company in Cook County, Illinois, by reading and by delivering a copy thereof to one Cronkhite, " attorney for service of legal process " of the company in the State of Illinois, on the 20th of February, 1878, the president thereof not being found in the county.

The declaration stated that the plaintiff was " Stephen E.

Woodworth, who sued as the administrator of the estate of Ann E. Woodworth, deceased, for the benefit and use of S. E. Woodworth." It averred that said Ann E. Woodworth died October 21st, 1875, at Seneca Falls, New York; "that the said Stephen E. Woodworth, for whose use and benefit this suit is brought, is the said S. E. Woodworth mentioned in the said policy of insurance as the husband of the said Ann E. Woodworth, and the same party for whose benefit the said defendant contracted and agreed, in said policy of insurance, to pay the said sum specified therein; that the said Ann E. Woodworth was, at the time of the making, executing and delivering the said policy of insurance as aforesaid, the wife of the said Stephen E. Woodworth, and that they were at the said time living together as lawful husband and wife, and that, at the time of the decease of the said Ann E. Woodworth as aforesaid, she left her surviving her said husband, the said Stephen E. Woodworth, who since her death has been a resident of the county of Champaign, State of Illinois;" and that the plaintiff was duly appointed such administrator by said letters. The declaration contained three special counts and money counts in assumpsit.

The defendant petitioned for the removal of the suit into the Circuit Court of the United States for the Southern District of Illinois. It stated, in the petition, that it was, at the time of the commencement of this suit, and still is, "a foreign corporation duly incorporated under and by the laws of the State of Massachusetts and doing business in that State," and had and still has its principal office or place of business at Boston; that the plaintiff was and is a citizen of Illinois; and "that it was served with process of summons herein" on February 20th, 1878, the service being on said Cronkhite, "its general agent at Chicago, in the said State of Illinois." The State court allowed the removal.

Issue being joined, the case was tried before a jury, which found for the plaintiff and assessed his damages at $5,348.73, for which amount, with costs, judgment was entered. The defendant sued out a writ of error. There was a bill of exceptions, the whole of which is as follows:

" At the trial of the above entitled action, which was assumpsit upon a policy of life insurance, a copy of which is hereto annexed and made part of this bill of exceptions, it appeared that said Ann E. Woodward, at the date of the issuing of said policy, re-. sided and was domiciled in the State of Michigan.   It appeared that she had never been domiciled in the State of Illinois, and had no other assets to be administered there than this policy ; that she died at Seneca Falls, New York, October 25th, 1875 ; that the plaintiff, the administrator, Stephen E. Woodworth, has resided continuously in Champaign County, State of Illinois, since January 1st, 1876, and had his domicil there at the time of the issue of letters of administration and the commencement of this suit, and then and there had in his possession this policy of insurance.   On this state of facts, the defendant, a corporation of the State of Massachusetts, at the time this suit was brought doing business in the State of Illinois by virtue of the laws of said last named State, requested the presiding judges to rule that the present plaintiff, as administrator appointed in Illinois, could not maintain this action.   A copy of the letters of administration, which were the only evidence of the plaintiff's authority to sue, is hereto annexed and made part of this bill of exceptions.   The presiding judges refused so to rule, and did rule that the plaintiff, if in other respects he showed a good cause of action, was entitled to recover, to which ruling the defendant immediately excepted and prayed that his exception might be allowed.   This bill contains all the evidence on the point herein above made."

*Mr. Alfred D. Foster* and *Mr. George F. Hoar*, for plaintiff in error.—I. Letters of administration may be attacked collaterally, and will be adjudged void for want of jurisdiction whenever and wheresover the jurisdictional power of the court granting them is shown not to exist. *Griffith* v. *Frazier*, 8 Cranch, 9 ; *Insurance Company* v. *Lewis*, 97 U. S. 682 ; *Holyoke* v. *Haskins*, 5 Pick. 20 ; *S. C.* 9 Pick. 259 ; *Crosby* v. *Leavitt*, 4 Allen, 410 ; *Embry* v. *Miller*, 1 A. K. Marshall, 221 ; *Miltenberger* v. *Knox*, 21 La. Ann. 399 ; *Patillo* v. *Barksdale*, 22 Geo. 356.   This is the law in Illinois.   *Unknown Heirs of Langworthy* v. *Baker*, 23 Ill. 484 ; *Ferguson* v. *Hunter*, 2 Gillman (Ill.) 657 ; *Farrel* v. *Patterson*, 43 Ill. 52.—II. No administration

can be granted in any jurisdiction where there are no local assets. *Wyman* v. *Halstead*, 109 U. S. 654.—III. All simple contract debts, of which this policy of insurance was one, are local assets at the domicil of the debtor.' The domicil of the original defendant, the plaintiff in error, is in Massachusetts, where the corporation was created, has its domicil and corporate home, and where, by its express terms, the policy is payable. *Wilkins* v. *Ellett*, 9 Wall. 740 ; *Wyman* v. *Halstead*, above cited.—IV. The · intestate having been domiciled in Michigan at her decease, the principal administration, to which all others are subordinate, must be in that State. There being no other assets in Illinois, this contract of insurance does not constitute *bona notabilia* in Illinois, " without regard to the place where the instrument is found or payable." And no Illinois court was authorized to grant limited or ancillary administration on her estate. *Cureton* v. *Mills*, 13 So. Car. 409.—V. By the statutes of Illinois, a duly appointed Michigan administrator might bring suit on this policy in Illinois. Rev. Stat. Ill. ch. 3, § 42.—VI. An administrator might be appointed in Massachusetts who could bring an action upon it there.—VII. Even if the Illinois administration was valid, by reason of the existence of local assets there, the Illinois special administrator could not bring an action on this contract.— VIII. It cannot be contended, even plausibly, that the debtor corporation had an Illinois domicil sufficient to justify the administration in that State. *Insurance Company* v. *Lewis*, 97 U. S. 682 ; *Bank of Augusta* v. *Earle*, 13 Pet. 519, 588 ; *Railroad Company* v. *Koontz*, 104 U. S. 5 ; *Relf* v. *Rundel*, 103 U. S. 222 ; *Paul* v. *Virginia*, 8 Wall. 168 ; *Canada Southern Railway Company* v. *Gebhard*, 109 U. S. 527.

*Mr. J. S. Lothrop* and *Mr. Geo. W. Gere* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

It is contended for the plaintiff in error, that the County Court which granted the letters of administration had no power

to do so, unless property belonging to Ann E. Woodworth when she died was left by her within the jurisdiction of that court.; that she was not domiciled in Illinois at the time of her death, and, therefore, it was necessary that assets belonging to her should have existed in that State at that time, to warrant jurisdiction to issue the letters, and it could not be obtained by bringing into the State afterwards property which was hers when she died; that, on the facts in the case, the debt of the company to her was not property of hers in Illinois when she died, even if the policy was in Illinois when she died; and that such a debt was a simple contract debt and was local assets only at Boston, which was the only domicil of the debtor.

The letters of administration state that Ann E. Woodworth had, at the time of her decease, personal property in the State of Illinois. The plaintiff's authority to sue was shown *prima facie* by the letters. The case was one provided for by the statute of Illinois, Revised Statutes of 1874, chap. 3, § 18, p. 107, which was as follows:

"Administration shall be granted to the husband upon the goods and chattels of his wife, and to the widow or next of kin to the intestate, or some of them, if they will accept the same and are not disqualified; but in all cases the widow shall have the preference; and if no widow or other relative of the intestate applies within sixty days from the death of the intestate, the County Court may grant administration to any creditor who shall apply for the same. If no creditor applies within fifteen days next after the lapse of sixty days, as aforesaid, administration may be granted to any person whom the County Court may think will best manage the estate. In all cases where the intestate is a non-resident, or without a widow, next of kin, or creditors in this State, but leaves property within the State, administration shall be granted to the public administrators of the proper county; *Provided*, That no administration shall in any case be granted until satisfactory proof be made before the County Court, to whom application for that purpose is made, that the person in whose estate letters of administration are requested is dead, and died intestate; *And provided, further*, That no non-resident of

this State shall be appointed administrator, or allowed to act as such. R. S. 1845, § 55, p. 547."

It is plain, that under this statute the husband had a right to administration on the property of his wife, if she had property in Illinois, as the letters state she had, when she died. Such was necessarily the decision which was made in the granting of these letters, and we have been referred to no decision in Illinois which holds to the contrary. The first branch of the statute covers all cases of intestacy where property is left to be administered; and the second branch, where the public administrator is brought in, does not apply where there is a husband surviving his wife, who applies for letters on her estate.

The letters being valid on their face, and in the form prescribed by the statute, Revised Statutes of 1874, chap. 3, § 21, p. 108, and apparently authorized by law, their validity must be distinctly negatived by what is set forth in the record, if the plaintiff's authority to sue is not to be supported by them. This is not done. On the contrary, the declaration of the letters that the intestate had personal property in Illinois when she died, is, we think, supported by what appears in the record, even if such property consisted solely of this policy.

In the growth of this country, and the expansions and ramifications of business, and the free commercial intercourse between the States of the Union, it has come to pass that large numbers of life and fire insurance companies and other corporations, established with the accumulated capital and wealth of the richer parts of the country, seek business and contracts in distant States which open a large and profitable field. The inconveniences and hardships resulting from the necessity on the part of creditors, of going to distant places to bring suits on policies and contracts, and from the additional requirement, in case of death, of taking out letters testamentary or of administration at the original domicil of the corporation debtor, in order to sue, has led to the enactment in many States of statutes which enable resident creditors to bring suits there against corporations created by the laws of other States. Such a statute

existed in Illinois, in the present case, requiring every life insurance company not organized in Illinois to appoint in writing a resident attorney, upon whom all lawful process against the company might be served with like effect as if the company existed in Illinois, the writing to stipulate that any lawful process against the company, served on the attorney, should be of the same legal force and validity as if served on the company, a duly authenticated copy of the writing to be filed in the office of the auditor, and the agency to be continued while any liability should remain outstanding against the company in Illinois, and the power not to be revoked until the same power should be given to another, and a like copy be so filed; the statute also providing that service upon said attorney should be deemed sufficient service on the company.   Revised Statutes of 1874, chap. 73, § 50, p. 607.

In view of this legislation and the policy embodied in it, when this corporation, not organized under the laws of Illinois, has, by virtue of those laws, a place of business in Illinois, and a general agent there, and a resident attorney there for the service of process, and can be compelled to pay its debts there by judicial process, and has issued a policy payable, on death, to an administrator, the corporation must be regarded as having a domicil there, in the sense of the rule that the debt on the policy is assets at its domicil, so as to uphold the grant of letters of administration there.   The corporation will be presumed to have been doing business in Illinois by virtue of its laws at the time the intestate died, in view of the fact that it was so doing business there when this suit was brought (as the bill of exceptions alleges), in the absence of any statement in the record that it was not so doing business there when the intestate died. In view of the statement in the letters, if the only personal property the intestate had was the policy, as the bill of- exceptions states, it was for the corporation to show affirmatively that it was not doing business in Illinois when she died, in order to overthrow the validity of the letters, by thus showing that the policy was not assets in Illinois when she died.

The general rule is that simple contract debts, such as a policy of insurance not under seal, are, for the purpose of

founding administration, assets where the debtor resides, without regard to the place where the policy is found, as this court has recently affirmed in *Wyman* v. *Halstead*, 109 U. S. 654. But the reason why the State which charters a corporation is its domicil in reference to debts which it owes, is because there only can it be sued or found for the service of process. This is now changed in cases like the present; and in the courts of the United States it is held, that a corporation of one State doing business in another, is suable in the courts of the United States established in the latter State, if the laws of that State so provide, and in the manner provided by those laws. *Lafayette Insurance Company* v. *French*, 18 How. 404; *Railroad Company* v. *Harris*, 12 Wall. 65; *Ex parte Schollenberger*, 96 U. S. 369; *Railroad Company* v. *Koontz*, 104 U. S. 5, 10.

It is argued for the plaintiff in error, that administration could have been taken out in Michigan on the policy, on the view that that was the domicil of the assured, and that it could have been taken out in Massachusetts, without regard to the location of the policy at the time of the death of Mrs. Woodworth, and without regard to the fact that she died in another jurisdiction; and the case of *Bowdoin* v. *Holland*, 10 Cush. 17, is cited as holding that administration may be granted in Massachusetts, on the estate situated there of a person who died while residing in another State, although the will of the deceased had not yet been proved in the State of his domicil, on the view that otherwise debts due in Massachusetts, to or from the intestate's estate, could not be collected. The reason assigned for taking out letters in Massachusetts has equal force when applied to a State where the debtor does business under the laws of that State, and can be sued as fully as in Massachusetts, and is sure to be found so as to be served with process. If the defendant is to be sued in Illinois, administration must be taken out there; and administration in Massachusetts or in Michigan would not suffice as a basis for a suit in Illinois. The consent and capacity to be sued in Illinois still require, if an administrator is to be the plaintiff, that letters should be issued in Illinois; and by the terms of the policy, on the death of the assured, the suit must be by her executor or administrator. So

it results, that the question in this case must be decided on the same principle as if Illinois were the only State in which suit could be brought, and therefore, the State in which letters of administration must be taken out for the purpose of a suit.

Nor is there anything inconsistent with this view in the fact that, as a corporation of Massachusetts, the defendant removed the suit from the State court on the ground of diversity of citzenship. It was not, as in *Memphis, &c., Railroad Company* v. *Alabama*, 107 U. S. 581, a corporation of the State in which the suit was brought as well as a corporation of the State which originally chartered it, but it was exclusively a corporation of Massachusetts for the purpose of availing itself of the privilege of removing the suit. Its diversity of citizenship for such purpose may well remain, because it does not desire a trial in the State tribunal. Yet its availing itself of the privilege of doing business in Illinois, and subjecting itself to the liability to be sued in a court in Illinois, with the effect of making the policy assets in Illinois, were voluntary acts, which, though not affecting the jurisdiction of the Federal court, may well be held to give a locality to the debt for the purposes of administration, so that a suit may be brought under such letters in Illinois.

There is nothing in the foregoing views which is in conflict with what was decided in *Wyman* v. *Halstead, ubi supra.* In consonance with what was said in that case, payment of this debt to the administrator appointed in Illinois will be good against any administrator appointed elsewhere; and the defendant will be protected in paying this judgment, especially as the husband is the exclusive beneficiary under the policy, and is the administrator and the plaintiff, and the money paid cannot be liable for any debts of the wife.

Nor is this case governed by the decision in *Insurance Company* v. *Lewis*, 97 U. S. 682. The question there was as to the authority of a public administrator in Missouri, under a statute of that State, to bring an action on the policy. It appeared affirmatively that the intestate resided in Wisconsin when he died, and died there, and that there was already an adminstrator appointed in Wisconsin, so that the defendant could not be

protected against a future suit by a proper representative of the estate.

The record of this case shows that a special plea was put in, setting up that at the time of her death the assured was not a citizen or resident of Illinois, and left no property situate in that State, and that her entire estate was the claim under this policy. This plea was held bad on demurrer. Error in sustaining the demurrer is assigned, but, as it appears by the bill of exceptions, that under the general issue, the defendant gave evidence of the matters set up in the special plea, and they constitute no defence, the overruling of the plea worked no injury to the defendant.

These views cover all the questions which are controlling in this case, and

*The judgment of the Circuit Court is affirmed.*